## James Swain v. Sampson and Keen.

To entitle a party to maintain an action to annul a judgment, a case must be exhibited of matter which would make it against good conscience to execute the judgment, and of which the injured party could not, with due diligence, have availed himself in the former suit, or of which he was deprived by fraud or accident. If there has been *laches* or negligence on his part, he is not entitled to relief.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *J. B. Bemiss*, for plaintiff. *J. Van Matre*, for defendants. The judgment of the court (*Eustis*, C. J. absent,) was pronounced by

Preston, J. The plaintiff brings this suit to annul a judgment rendered against him in favor of the defendants. He charges, that the defendants were guilty of fraud in writing the notes, upon which the judgment was rendered, payable to the order of *James Swain*, and of fraud and illegal practices in procuring false testimony to obtain the judgment sought to be annulled.

It appears, that *Mrs. Hunstable*, a sister of the plaintiff, puchased a large bill of furniture from the defendants, amounting to about $1300. She had two brothers; the plaintiff, a man of means, who kept a boot and shoe store under the St. Charles Hotel, and one, without means, named *John Swain*, employed at the time by a *Mr. Stewart* and afterwards by the plaintiff.

The defendants required endorsers of the notes given for the bill of furniture, and filled them up payable to *James Swain*. They were taken by *Mrs. Hunstable* for the purpose of procuring the endorsements, and returned endorsed *J. Swain*. It is now ascertained, that the endorsements were made by *John Swain*, the brother employed by *Stewart* and the plaintiff, and not by *James Swain*, the owner of the store. Still, we are satisfied by the evidence, that the defendants sold the furniture for the endorsement of *James Swain*, and that there was no fraud on their part, as alleged, in inserting his name as payee, with the intention of holding him liable as the endorser of the notes. We are equally well satisfied by the evidence, that there was not, as alleged by the defendants, fraud or confederation on the part of *James Swain*, with his sister, *Mrs. Hunstable*, to substitute his brother's for his own endorsement. The error has grown out of the folly of men writing the initials of their names, instead of writing in full the christian name which was given in baptism, to distinguish them from other persons; a reprehensible custom, which probably grew itself out of the affectation of great hurry by men who had little to do. *J*, on the back of the notes, did not distinguish *John* from *James Swain*; and the parties must stand upon their legal rights growing out of subsequent events.

The defendants sued the plaintiff on the endorsements. The petition and citation was served upon him personally. He suffered judgment by default to be rendered against him, and to be confirmed; and now sues to annul the judgment, on the ground that the defendants were guilty of fraud and illegal practices in procuring false testimony to obtain the judgment. There is no doubt the defendants believed the plainliff endorsed the notes. What testimony they offered to confirm their judgment by default, does not appear. The notes were received, as endorsed by the payee, *James Swain*; they were all protested, as notes payable to *James Swain*, and notice given to the person supposed by the

notary to be the payee and endorser; and the district judge is under the impression the witness, on whose testimony the judgment was confirmed, stated, that the person to whom they were presented, answered as *James Swain*, or the owner of the store, and acknowledged the signatures. Although, then, there may have been error in the testimony on which the judgment was confirmed, there is no proof of fraud in offering the testimony, or that the witness committed perjury, as contended. Now, error in the testimony, without fault of the party or witness, is not laid down as a ground for annulling a judgment. C. P. 607. Though we will not say it might not have that effect, if there was no *laches* or fault on behalf of the party against whom the judgment was rendered. Whatever might be the decision on that question, there was such *laches* and fault on the part of the plaintiff in the case under consideration, causing the injury of which he complains, that it is impossible to afford him relief. He should have appeared to the service of the petition and citation, and denied that he was the endorser of the notes; and then no error or fraud could have occurred in the testimony, having an effect on the judgment, which the court would not have redressed.

On this part of the subject, we cannot express ourselves in better nor stronger language than that used by the district judge. If there was a defective cause of action, or no cause of action, it was the duty of the party to appear and show it, and he had no more right to disobey the citation to appear and answer the petition, than if he had paid the notes, or if they were prescribed, to neglect pleading those things in defence. Relying upon his right to an injunction, nothing is more fully settled in our jurisprudence, than that matters which might have been set up in defence, to an original action, cannot furnish ground for an injunction. *Livingston* v. *Winfrey, Sheriff, et al.*, 5th Ann., 670. *Minor* v. *Stone*. 1st Ann., 284. *Morgan* v. *Driggs*, 3d Ann., 124.

It is said, no case has been referred to, in which this principle has been claimed for a judgment taken by default, and confirmed. That is true; but the principle is based upon the neglect of the party to make a timely defence, when in his power. Now, there is certainly as much negligence in failing to appear and make any defence at all, as in failing to present the defence, having appeared.

Moreover, we consider the very question before the court decided in the case of *Fristoe* v. *Norris*, 3d Ann. 646. We there held, that to annul a judgment, a case must be exhibited of matter which would make it against good conscience to execute the judgment; matter of which the injured party could not have availed himself in the former litigation, or of which he was prevented by fraud or accident from availing himself. The matter must also be such as the party, by the use of reasonable diligence, could not have known; for, if there have been *laches* or negligence, that destroys the title to relief. Story's Equity Jurisprudence, § 887. Story's Equity Pleadings, § 414. *Garlick* v. *Reece*, 8 L. R. 101, *McMecken* v. *Millaudon*, 2 L. R. 180. And there is a peculiar and strong reason for applying these principles, in the present case. When the judgment, by default, was confirmed against the present plaintiff, he applied for a new trial, not on the ground that the judgment had been obtained through fraud, or other ill practices of the plaintiffs, but on the ground that the judgment by default was taken and confirmed, without any service of the copy of the petition or service of the citation, either personally or otherwise, upon him. And, in support of the application, he made an affidavit, that he had never been served with either a copy of the petition or of the citation, in this case, and had been con-

demned to pay a large sum of money, without notice of the suit, no service, personal or otherwise, having been made upon him. Yet, on the trial of the rule, he admitted, by his counsel, that the citation and copy of the petition in the case, was, in fact, served on the defendant on the day, and in the manner stated in the return. Now, the sheriff had returned, in the case of *Sampson* and *Keen* v. *James Swain*, that he had served a copy of the citation and petition, personally, on the defendant.

This, naturally, threw suspicion in the mind of the district judge, upon his whole case, and induced him to draw conclusions then, as well as in the present case, unfavorable to the pretensions of the plaintiff, on the merits. For, although the frauds and ill practices now complained of were not set forth as a distinct ground for a new trial, yet the court allowed the present plaintiff to give evidence of them, and, yet, overruled the application. If he had based his application on the true ground that he had never endorsed the notes, knew nothing of them, had not received the notices of protest, and had not, by silence or connivance, contributed to the error into which the plaintiff had been led by his brother and sister, and that he had not appeared in obedience to the citation, from a confidence that the plaintiffs would not prove that he had any connection with the notes, and, having proved all this, had appealed to the wise discretion of the judge for a new trial, on the ground that injustice had been done him, and that it would be contrary to good conscience, on the part of the plaintiffs, to execute the judgment, it is probable the court would have yielded to his application. He did not do so, but, in fact, made his present demands, and gave testimony in support of them, under such circumstances, that it did not avail him, and probably was disbelived then, as in the present suit. The plaintiff having offered testimony, in support of his application for a new trial, to the very facts which are the basis of this suit, to annul the judgment, if it were necessary to the decision of the case, we should incline to the opinion, that the matter in controversy between the parties was adjudged, in that suit, by a judgment from which no appeal has been taken. This is, at least, a strong additional reason to those already given, for affirming the judgment rendered in the present case.

It is affirmed, with costs.