## No. 11,971.

### M. A. COCKERHAM ET AL. VS. S. B. PEROT.

If the principal undertakes to makes the act his own, the ratification should be timely and established beyond question as against the other contracting party.

The party to a contract, by delaying to pay the price and finally by acquiescing in the release of the vendor, is precluded at a date subsequent from claiming the property.

If considered as an agent, as averred, and that the contract involves a principal other than the one mentioned on the face of the contract, it is not evident that the agent has exceeded his authority.

Having objected to the testimony on the ground that it was not admissible under the plea of general denial, the plaintiff waived the objection by obtaining time to rebut the testimony admitted.

APPEAL from the Tenth Judicial District Court for the Parish of Natchitoches. *Andrews, J.*

---

*Egan & Egan* and *Scarborough & Carver* for Plaintiffs, Appellants.

---

*Jack, Tucker & Fleming* for Defendant, Appellee.

---

Argued and submitted December 20, 1895.
Opinion handed down January 6, 1896.
Rehearing refused February 10, 1896.

---

The opinion of the court was delivered by

BREAUX, J. This action was instituted to recover ·the sum of twenty–two hundred dollars damages for the alleged violation of a contract by the defendant in having failed to deliver three hundred tons of cotton seed, and to recover an additional sum of five hundred and fifteen dollars, the asserted value of five thousand one hundred and fifty cotton seed sacks, plaintiffs claim to have delivered to the defendant.

14

The plaintiffs are the Independent Oil Company and M. A. Cockerham. The contract was made, it is alleged, by the co-plaintiff, acting for the former, the company, as agent; it is signed in his individual name by inadvertence, it is asserted.

The defendant is a merchant and was the owner of cotton seed, and sold to plaintiff three hundred tons of his seed at four dollars per ton, plus one dollar per ton for storage in appearance, but in reality part of the price, thus concealed to serve the buyer's purpose.

The plaintiff company alleges that its agent called upon the defendant in the town of Campte, and demanded delivery of the seed, at the same time offered to pay for it at contract price, with an additional one dollar per ton for storage, as called for by the contract.

That the defendant refused to receive the amount. This was some time in June, some two months after the date of the contract.

The defendant pleads a general denial, and specially avers that he signed the document declared upon with A. Cockerham personally and not as agent. He avers that at the date of the contract he produced a letter purporting to have been written and signed by the Independent Oil Company, authorizing him to buy his cotton seed, with that of others named, at five dollars per ton delivered on the banks of the Red River; that being one dollar in excess of the price fixed between the plaintiff company and other companies.

The purpose, it is further alleged, was to make the contract in such form that the violation of agreement with the other companies could not be detected by them, and that this accounts for the signature of Cockerham personally, and the one dollar extra charged in the way of storage, so as to make one dollar per ton.

The respondent also avers, substantially, that he believed him a solvent contracting party at the time, but subsequently was informed of his insolvency.

He also alleges with particularity that he was not the agent of the plaintiff company, and had a number of witnesses examined in support of his defence.

The defendant propounded interrogatories on facts and articles to plaintiffs, touching all the facts of the case. The answer of these witnesses controverted the facts the defendant sought to prove by the interrogatories.

The defendant moved the court to traverse the answers on facts and articles.

.The facts are that cotton seed had risen in value from the 6th of April, the date of the contract, to the 18th of June, 1895, when the tender of the price and delivery of the seed demanded, was made.

In April the plaintiff, Cockerham, appeared before a committee of persons interested in buying cotton seed, for the purpose of discussing price of that product on Red river.   Something in the meeting was said about cutting prices with reference to the contract here involved.   Subsequently the buyer met the defendant on the streets and asked him why he had divulged the business secret, an accusation at the time denied by the latter.   The defendant says that he asked him the explanation he had made, and that his answer was that he had said to the agents of the different mills thus assembled that he had bought the seed for his own account.   He then repaired in company with the buyer to the office of the Independent Oil Mill and there met the president.

There is direct and irreconcilable conflict as to what was said. The president testifies that he said to the defendant that he " would maintain and ratify the contract."   The defendant is quite emphatic that no such a declaration was made to him.

Another point of conflict arose in regard to an asserted interview between the buyer, Cockerham, with the defendant in the presence of the two clerks of the latter.   The contract was treated as rescinded " off " the latter said, while the buyer not only denies that there ever was any such rescission, but asserts that no such interview was ever held.

These witnesses also testify that at a date subsequent the buyer, in the presence of another agent of the oil company, offered to buy the seed in question at an advance of one dollar a ton.

This is also denied by the buyer.   The record does not disclose that he sought to corroborate his testimony by calling upon the other agent present to testify as a witness.

The defendant testifies that he was not aware of the insolvency of the buyer on the day that he sold the seed.   The buyer says it was a well known fact to him.

It is also shown that two of his drafts were not honored by the plaintiff company, a fact which came to the defendant's knowledge a short time after the sale.

There is also divergence in the testimony in regard to the terms of payment.   The witnesses for the defendant testify that the seed

was to be received and paid for in a few days after the sale. The defendant sought to justify the delay by testifying that the Red river was low and the navigation thereby impossible, while witnesses for the defendant testify quite to the contrary.

There were seed sacks received; a number not returned to plaintiff. The evidence of the condition under which they were delivered was as much involved in contradiction as were the facts subsequent to the written contract. The proof admitted in support of the reconventional demand for value of the sacks returned is the last question propounded for our decision.

The judgment of the District Court was for the plaintiff for the sum of one hundred and seventeen dollars and fifty cents, with interest, price of sacks received and used by the defendant, and it rejected the remainder of plaintiff's demand.

From the judgment plaintiff prosecutes this appeal.

THE ATTORNEY SHOULD ACT IN THE NAME OF HIS PRINCIPAL.

To recover the difference between the market price of the seed at the time suit was brought, and the purchase price as agreed upon in the written contract, in other words the profits contemplated, the plaintiff must clearly show that the contract was entered into between the defendant and the oil company, and that the latter, as plaintiff, is really entitled to the benefit claimed. It is in evidence that prior to contracting the buyer read a letter of instruction he had received from the company. There was nothing very assuring in the expressions, although it did authorize the holder to buy seed at a price partly in guise of charges for warehousing the seed. He was advised to be very chary how he wrote anything and to provide a special obligation in regard to the additional dollar of the price.

From the seller, we infer, was obtained the promise of secrecy about the price, a promise of no great importance, save that it had a tendency to take the transaction out of the ordinary line of business.

This was followed by the contract in which the buyer personally obligated himself to pay the price stated. The time of payment or of the delivery of the seed was not inserted in the contract.

The alleged inadvertence in signing the contract of sale is quite unusual with a careful man of business. The weight of the testimony does not support the theory that the Independent Oil Company was the contractor.

It has also been held that whatever authority the signer may have to bind another, if he does not sign as agent or attorney, he binds himself.

"And in the case put, by the very form of the contract, the agent represents himself to be the seller and thereby, as between himself and the buyer, he binds himself by that representation as a contracting party." Story on Agency (4th Ed.), Sec. 270.

It can not be denied, it is true, that the rigid doctrine of the common law has yielded to the exigencies of mercantile transactions and that now much is left to proof *aliunde* to bind the principal.

None the less the principal appoints the attorney to be in his place and in consequence the attorney should act in the name of him who gives the authority. (*Ib.*, Sec. 148) ; otherwise, as a matter of evidence there is presumption of considerable weight against the position that he represented the alleged principal. Considered as the contract of M. A. Cockerham, he is met by the objection that he was insolvent, a fact not known by the seller at the date of the contract he testifies, but which afterward came to his knowledge. The buyer admits his insolvency and says that the fact was known to his vendor—as evidence it remains in that condition, without further evidence, between this plaintiff and the defendant.

Further it is urged that two of his drafts, on his co-plaintiff, drawn about the date of the contract here, were not honored. It was entirely owing to a misunderstanding, the plaintiff testifies. It is not shown that the defendant was in any manner aware of the alleged mistake. The record further discloses that the defendant and two witnesses testified that this plaintiff some time after the sale acquiesced in a cancellation of the sale. This is denied by this plaintiff alone. The District Judge, who presumably is acquainted with these witnesses, heard them testify, decided that the weight of the testimony was with the defendant. We have not discovered that he has erred. At a time subsequent these witnesses for the defence testified that this plaintiff, in the presence of an agent of the oil company, offered at an advanced price to buy the identical seed he claimed to have bought. The record does not show that the plaintiff sought to corroborate his testimony in denial by the evidence of his alleged co-agent.

### ACQUIESCENCE OF AGENT.

But it is argued that the co-plaintiff was only the agent.

If this be granted, may it not be suggested that an agent with all the power claimed by the plaintiff for this agent, even the power of binding his principal without naming him in a contract, or without the most remote reference to his interest, may acquiesce in the rescission of a contract or abandon all interest therein.

### PROPERTY USED.

In regard to the item of one hundred and seventeen dollars and fifty cents. The defendant was properly charged with the value of the sacks he had used, sustained as it is by a preponderance of evidence. Having been used and not returned, less could not be required of the defendant than the payment of their value. One who makes use of property, although it may be with the consent of the owner, is bound for its return or for what it is worth.

### RECONVENTIONAL DEMAND.

This brings us to the last issue of the case. The plaintiff claimed five hundred and fifteen dollars for some five thousand seed sacks.

The defence set up in the answer against this demand was a general denial.

Ordinarily every means of defence, such as payment, release and novation, showing the extinction of an obligation, must be specially pleaded, and can not be shown under the general issue.

But the defendant was acquiescent after the ruling had been made. The trial judge, at his instance, allowed him to get testimony to disprove the return of the sacks, of which the defendant availed himself. This was virtually an abandonment of the objection.

It is therefore ordered, adjudged and decreed that the judgment be affirmed.