### WUNDERLICH v. PALMISANO.

### SAME v. WOHLERT et al.

### No. 16618.

Court of Appeals of Louisiana. Orleans.

Jan. 10, 1938.

John D. Nix, Jr., of New Orleans, for appellant Peter B. Palmisano.

Edw. K. Wunderlich and Quintero & Ritter, all of New Orleans, for appellee Edw. Wunderlich.

## JANVIER, Judge.

This litigation results from an attempt by Edward Wunderlich to execute a judgment obtained by him against certain of the comakers of a promissory note of which he himself was one of the makers and which he had been required by the holder to pay. The comakers who, with Wunderlich, executed the note were Michael Wohlert, Miss Rosa Palmisano, and Paul John Grethel. Wunderlich, alleging that he had been required to pay the holder of the note the sum of $303.50, sought and obtained solidary judgment against the other said comakers for the said amount, with legal interest from judicial demand and with 20 per cent. on the whole as attorney's fees, as provided for in the note, which he alleged that he had paid. He was unable to cite Grethel, but obtained domiciliary service on Wohlert and personal service on Miss Rosa Palmisano. Neither of the two last-named defendants appeared within the time provided by law and, accordingly, on October 26, 1933, Wunderlich obtained judgment against them solidarily as prayed for. This judgment was duly signed and was then recorded in the mortgage office of the parish of Orleans. At that time Miss Rosa Palmisano was the owner of a certain piece of real estate situated in the parish of Orleans identified by the municipal numbers 7309-11 Cohn street. On May 23, 1934, Miss Rosa Palmisano executed a notarial act purporting to transfer the said property to her brother, Peter B. Palmisano. On September 24, 1934, Wunderlich, finding that the said act of transfer had been executed by his judgment debtor, filed an hypothecary action in which he prayed that Peter B. Palmisano, the transferee, be ordered to pay the judgment rendered against his pretended vendor, or surrender the said property to the civil sheriff in order that it might be subjected to the judgment against Miss Rosa Palmisano.

In the meantime Miss Palmisano died. The exact date of her death is not shown, but it appears that on September 11, 1934, Peter B. Palmisano qualified as administrator of her estate. On October 23, 1934, Palmisano, in his individual capacity and also as administrator of the estate of Miss Rosa Palmisano, filed, in the original suit in which Wunderlich had obtained the solidary judgment, a petition in which he, Palmisano, prayed that the said judgment be annulled and set aside. He alleged two grounds of nullity.

First, that the name "Edward Wunderlich" had been stricken out as a comaker of the note and as a coindorser thereof and that thereby, because of the provisions of section 48 of the Negotiable Instruments Law of Louisiana, Act No. 64 of 1904, the other comakers and coindorsers had been released. That section reads as follows:

"The holder may at any time strike out any indorsement which is not necessary to his title. The indorser whose indorsement is struck out, and all indorsers subsequent to him, are thereby relieved from liability on the instrument."

The second ground of nullity urged by Palmisano was that, as a matter of law, Wunderlich, having paid the note, was not entitled to a solidary judgment against his comakers, but, at best, might have obtained against each, judgment only for the virile share of each, and that, therefore, the solidary judgment against all should be annulled.

To this petition to annul the judgment, Wunderlich, after certain preliminary pleas and exceptions, filed answer in which he alleged that all of the facts set forth in the petition to annul were well known to the said Rosa Palmisano when the said judgment was rendered, could have been availed of on appeal, and, therefore, could not form the basis of a judgment of nullity.

Shortly thereafter Wunderlich filed a remittitur in which he agreed to the reduction of the judgment which he held to the virile share of the defendant and in which he also agreed to the elimination of the attorney's fees which had been awarded in the judgment.

The suit to annul and the hypothecary action were, by consent, tried together and a judgment was rendered in favor of Wunderlich on both issues involved. In other words, the prayer for the annulment of the judgment was denied and the transfer of the real estate to Palmisano was held to be in violation of the rights of Wunderlich and Palmisano was ordered to pay the judgment, or to surrender the property to the civil sheriff. The amount of the judgment was reduced in accordance with the remittitur filed by Wunderlich, but all of his rights resulting from the recordation of the original judgment were reserved. From this

judgment, Palmisano has appealed and directs his attack at the admission by Wunderlich that the original judgment should have been a joint one against the comakers—each only for a virile share—instead of a solidary one against each for the whole.

We shall first consider that issue which is presented by the suit to annul.

It is conceded that, as a matter of law, a comaker who pays the whole amount of a note is not entitled to a solidary judgment against his comakers. R.C.C. art. 2104.

But the mere fact that a judgment is rendered for an incorrect amount does not give rise to an action of nullity. If an error of law or fact was made by the court, it was made after the interested parties had been personally cited and it could have been corrected on appeal. There was no fraud involved; the plaintiff made an error of law in praying for a solidary judgment and the court unwittingly erred in granting that judgment. But the fact that a judgment is erroneous, as we have said, does not give rise to an action of nullity.

In Mercantile Adjustment Company v. Powers et al., 5 La.App. 534, there was involved an effort to annul a judgment. This court said:

" 'Where one personally cited, with full knowledge of matters afterwards urged for an injunction, allows a default to be made final against him without interposing any plea or applying for further time to answer or for a continuance, or suggesting an inability to make at the time a proper defense, he cannot enjoin and annul the judgment; it would be a premium for neglect. Art. 607 C.P. does not apply to such a case.' McRae v. Purvis, Gladden & Co., 12 La. Ann. 85; Succession of Lebrew, 31 La.Ann. 212; Perry v. Rue, 31 La.Ann. 287; Hood v. Frellsen, 31 La.Ann. [577], 582; Baham v. Stewart Bros. & Co., 109 La. 999, 34 So. 54; Lazarus v. McGuirk, 42 La.Ann. [194], 201, 8 So. 253; Cockerham v. Perot, 48 La. Ann. [209], 213, 19 So. 122; Lindquist v. Maurepas Land & Lumber Co., 112 La. 1030, 36 So. 843."

In Succession of Lebrew, 31 La.Ann. 212, 214, the Supreme Court of Louisiana, through Mr. Justice Edward Douglas White, said:

"If any thing is settled in our jurisprudence, it is that one can not be heard by way of action in nullity to destroy a judgment for matters known and in existence at the time of the institution of the suit in which the judgment was rendered, even though by some neglect they may not have been pleaded. (Chinn v. First Municipality of City of New Orleans), 1 Rob. 523; (Derbigny v. Peirce), 18 La. 551; (Norris v. Fristol), 3 La.Ann. 646; (Swain v. Sampson), 6 La.Ann. 799."

In Conery v. His Creditors, 118 La. 864, 43 So. 530, 532, the Supreme Court said:

"If the court erred in its judgment, it was a matter for review on appeal. It presents no issue which can be decided in proceedings to annul the judgment. It does not, within the most latitudinarian construction which can possibly be placed on articles 606 and 607 of the Code of Practice, fall within the terms of these articles relating to actions of nullity."

In Hoggatt's Heirs v. Crandall, 39 La. Ann. 976, 3 So. 89, 91, appears the following:

"We do not claim that our judgments are infallible; but when they become final, they are certainly irreversible by inferior courts, and even by ourselves, on mere grounds of error. In thus deciding we do not forget, nor do we violate, the principle that in an action to annul a judgment the judgment so assailed cannot be pleaded as res adjudicata. That principle only applies to grounds of nullity which were not considered and validly determined in the judgment itself."

In Heroman v. Louisiana Institute for the Deaf and Dumb, 34 La.Ann. 805, 813, the principle is thus stated:

"If there be no other ground of annulling the judgment than error of decision upon the issues involved, the decision upon those issues is final as between the parties to the litigation and operates as res judicata. This is self evident. * * * No principle of law is more inflexible than that which fixes the absolute conclusiveness of such a judgment upon the parties and their privies. Whether the reasons upon which it was based were sound or not, and even if no reasons at all were given, the judgment imports absolute verity, and the parties are forever estopped from disputing its correctness. * * * 'Matters once determined in a court of competent jurisdiction, may never again be called in question by parties or privies against objection, though the judgment may have been erroneous and liable to, and certain of, reversal in a higher court."

In McMicken v. Millaudon, 2 La. 180, it was sought to annul a judgment for various reasons, one of which was "that the judgment was erroneous in giving interest where the verdict did not find any." The court said:

"But such an error, if there was such a one, furnishes no ground to enjoin the judgment. There must be an end to litigation at some time, and in some place. And if on errors, real or alleged, causes were to be tried again, after judgment unappealed from, or after those rendered in the last resort, they would never terminate. This is no cause of nullity—it is not pretended it was through the corruption of the judges, or the fraud of the defendant, that interest was given from judicial demand, when it ought not to have been given."

It is obvious, then, that the judgment may not be attacked on the ground that it is erroneous and it is not attacked on any of the grounds set forth in articles 606 and 607 of the Code of Practice.

The same may be said concerning the charge that the striking out of the name of Wunderlich on the face of the note and on the reverse thereof released all the other comakers and coindorsers. This defense should have been made in the original suit and not by way of an action to annul.

Furthermore, this is not a suit on the note. It is merely a suit by one who was compelled to pay a note against those from whom he is entitled to partial reimbursement. Besides, in one of the briefs filed on behalf of Palmisano appears the statement that the name of Wunderlich was stricken out by him after he had paid the note. We do not see, therefore, that section 48 of the Negotiable Instruments Act has any application.

Nor does the remittitur filed by Wunderlich adversely affect his rights so as to give Palmisano a right to annul the judgment. Wunderlich realized that though, as a matter of law, he could have executed his solidary judgment, it was inequitable for him to do so, and he voluntarily consented to its amendment. He could have executed for the full amount. Instead he chose the fairer course. It cannot be said that, by doing so, he lost his rights under the judgment.

Since the judgment held by Wunderlich is a valid one and since it was recorded while Miss Rosa Palmisano was still the owner of the property which is involved in the hypothecary action, it necessarily follows, that any transfer could be made only subject to the rights obtained by Wunderlich as a result of that recordation. R.C. C. art. 3399. Accordingly, the transferee "is bound either to discharge the principal, together with all interest of the debt for which the property was mortgaged, to whatever sum they may amount, or to relinquish the property without any reservation." R.C.C. art. 3400.

The final question presented involves the liability for costs which Wunderlich was required to pay in obtaining judgment against the comakers. Though it is true that, in such situation, each of the comakers is liable only for a virile share of the principal amount, all who have not paid are liable solidarily for the costs incurred in bringing suit against them. This results from article 2087 of the Civil Code, which reads as follows:

"If one of the obligors in a joint obligation has performed or discharged his part of the obligation, although he must be joined in the suit, on account of the eventual interest he has for the repetition of his payment, if the contract be disproved or annulled; yet, if the contract be affirmed, the defendant, who has paid his proportion or performed his part, shall have judgment. The judgment for the costs is in solido against all the defendants who have not paid or performed their parts."

It is true that the original obligation was a solidary one; that is to say, all of the comakers were solidarily liable. But, when one of them paid the note, the obligations of the others to him were joint in accordance with article 2104, and therefore, since Wunderlich found it necessary to bring suit against joint obligors, he was entitled to a solidary judgment for his costs against those obligors. See, also, Hunter v. Laurent, 158 La. 874, 876, 104 So. 747; State v. Miller, 169 La. 914, 934, 126 So. 422; Gibbons, Inc. v. S. & B. Stable, La.App., 144 So. 641.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.