MOISE, Justice.
Plaintiffs prosecute this appeal from an adverse judgment of the district court sustaining a plea of res adjudicata.
Three children of the late Frank Guilbeau, sole surviving issue of his first marriage, instituted this suit against the five children of his second marriage and his stepson, to be declared co-owners with the defendants of certain property alleged to belong to the community previously existing between their father and his second wife. The property in question, however, was decreed to be the separate property of the second wife and, consequently, its Ownership vested equally in all of the defendants herein, by six previous judgments of the 17th Judicial District Court in and for the Parish of Lafourche, in favor of each defendant herein, respectively.
The property was acquired by Mrs. Leocadie Bourg, the second wife of Frank Guilbeau, on Oct. 9, 1915, during the community of acquets and gains which existed between them. No declaration was made in the act as to the paraphernality of the property nor was it stated therein that the property was being purchased with separate and paraphernal funds of Mrs. Leocadie Bourg Guilbeau. Subsequently, on February 12, 1916, Mrs. Guilbeau sold a portion of this property and thereafter continued in the ownership of the remainder thereof. She died in November, 1918, leaving as her sole heirs, Clifton Eserman, a son of a former marriage, Dewey P. Guilbeau, Jeffery Guilbeau, Mrs. Selvina Guilbeau Terrebonne, wife of Donate Terrebonne, Mrs. Mabel Guilbeau Cheramie, wife of Telemaque Cheramie and Eddie Guilbeau. On May 28, 1926, Frank Guilbeau, the widower, executed an affidavit in which he declared that the property was bought with the separate and paraphernal money of Mrs. Leocadie Bourg Guilbeau, that the property never was community property, that he never owned any part thereof, and that his wife accumulated the amount with which she purchased the above property from money given to her by -her children, who worked with Frank Guilbeau (the father) at sea. The succession of Mrs. Guilbeau was opened *321 and judgment was rendered in September 25, 1926, and the six above named children were recognized as her sole heirs and sent into possession of said property, in equal proportions. On April 4, 1927, by notarial act, the property was partitioned in kind among these heirs (two of whom subsequently exchanged their respective parcels.) Notwithstanding the affidavit executed by Frank Guilbeau and placed of record and the judgment in the Succession of Mrs. Leocadie Bourg Guilbeau, John Guilbeau, Andrew Guilbeau, Octave Guilbeau and Mrs. Marie Artelise Guilbeau, wife of James Pitre, the children of the first marriage (appellants herein), continued over a period of years to file affidavits, in which they attempted to register notice that they would eventually assert a claim to an interest in the property in question on the ground that it was community property and not the separate property of Mrs. Leocadie Bourg Guilbeau. On May 27, 1937, appellants filed with the Clerk of Court for the Parish of Lafourche a notice of lis pendens-, on December 10, 1937, they filed suit against their father, praying for an accounting; and on May 11, 1939, they filed another suit, praying for an order to perpetuate testimony.
On February 25, 1947, Eddie Guilbeau, Dewey P. Guilbeau, Selvinia Guilbeau, Mabel Guilbeau and Jeffery Guilbeau and their stepbrother, Clifton Eserman, (children of the second marriage) appellees, each filed separate suits against the appellants and Mrs. Elizabeth Guilbeau, widow of Andre Guilbeau their deceased brother, alleging that defendants (appellants) had filed certain affidavits of record wherein it was claimed that the property was community property and which was a cloud upon the title of each plaintiff; that petitioner was the owner of the particular tract of land; that the property was the separate property of Mrs. Leocadie Bourg Guilbeau, and that they had acquired their interest from their mother. The defendants in these actions, answered averring that the property belonged to the community and that they had a right to file the affidavits, etc. The father was made a party defendant. The defendants were represented by counsel, and after hearing the evidence, six separate judgments were rendered in favor of plaintiff-(appellees) and against the defendants, (appellants) decreeing each appellee to be the owner of the property and ordering .that the clouds, the affidavits and judicial proceedings referred to in the petition, be cancelled, and the proceedings to perpetuate the testimony be dismissed. No appeal was taken from these six judgments. Frank Guilbeau, the father died on June 16, 1948.
On December 6, 1948, appellants instituted the present suit, to be recognized as co-owners of the property in dispute and in these proceedings prayed for judgment:
“Recognizing that the placing of the property originally in the name of Mrs. Leocadie Bourg, wife of Frank Guilbeau, *323 was a fraud * * * and further recognizing that said property belonged to the community of acquets and gains existing between Frank Guilbeau and his wife, Leocadie Bourg.
“That the ex parte judgment rendered in the proceedings entitled ‘Succession of Leocadie Bourg,’ bearing the number 2848, wherein her children were recognized as her sole heirs and entitled to be recognized as owners of said property was fraudulent and erroneous and should be set aside,
“That the affidavit as made by Frank Guilbeau * * * should be ordered can-celled and erased from the records * * *
“That the six (6) judgments rendered in proceedings numbered 8990 through 8995 * * * should be set aside * * * and
“That your petitioners * * * be recognized as the owners of one-sixteenth fl/16th) undivided interest each in the property * *
The defendants (appellees) in that suit filed a plea of res adjudicata in which they averred that the things demanded in this litigation had been demanded by the plaintiffs (appellees herein) in the six different suits that had been filed in the 17th Judicial District Court in and for the Parish of Lafourche; that the demand was founded on the same cause of action; that the parties to the suit were the same identical parties, and that the objects demanded in the present suit are precisely the same as those demanded by the plaintiffs in the original suits; and further, that judgment had been rendered in each case by the district court, that these judgments had become final, that more than one year had elapsed since their rendition, and that no appeals had been taken; and they prayed that their plea of res adjudicata be maintained.
Trial was had in the district court on the plea of res adjudicata and after hearing of ■the arguments of both counsel, the district judge rendered judgment maintaining the plea and dismissing plaintiffs’ suit, and from this judgment they are appealing.
The issue presented for determination is whether the judgments rendered decreeing the property in question to be the separate and paraphernal property of his second wife are of equal or greater effect than any declaration which he could have made at the time the property was acquired that it was separate and paraphernal, forming no part of the community.
The answer is obvious. As there has been a judicial recognition of the separate and paraphernal nature of the property involved, plaintiffs here are estopped to question it anew.
Counsel for appellants, to support their contention that the plea of res adjudicata should not be sustained, have cited authorities including Bauman v. Pennywell, 160 La. 555, 107 So. 425 and Reine v. Reine, 170 La. 839, 129 So. 364. In these cases the pattern of facts are not the same as in the *325 instant case. The design in law is different. In the instant case, the children who are the appellants were not precluded from making the attack. When Mrs. Leocadie Bourg Guilbeau, the second wife died, it was fit and proper and necessary for the district judge to determine what her estate consisted of. Her children claimed that certain property which she left was her separate property. The appellants in this case had made certain affidavits which were recorded, wherein they contended that the property was community property acquired during the marriage between Mrs. Leocadie Bourg Guilbeau and Frank Guilbeau. The appellees before us, the children of the second marriage, filed proceedings to have these clouds removed from their title which had been placed thereon by appellants, the children of the first marriage. Frank Guilbeau surviving widower in community was a party-defendant. The appellants not only had an opportunity to contest the claim of appellees but, in fact, employed an attorney, filed an answer, and the case was tried on its merits. The court found, in six separate judgments that the property was separate property and ordered the clouds removed. If the property were community property as contended in the answers filed by these appellants, these suits would have failed and the clouds on the title would not have been removed. However, the court found that the property was separate property and ordered by its judgments the cancellation and removal of the clouds from the title of plaintiffs (appellees). More than a year elapsed and the appellants, the defendants then, did not take an appeal. Therefore, not only should appellants’ father, Frank Guilbeau, be bound by the thing adjudged but certainly these heirs themselves have had their day in court and have had full opportunity to prove that the property in question was community property. This they failed to do. They are certainly bound by the six judgments and have no right to try the identical issues all over again. The law has determined in its majesty that there must be an end to litigation.
Chief Justice White of the United States Supreme Court, while sitting as a justice on this Bench, was the organ of the Court in the Succession of Lebrew, 31 La.Ann. 212, and although that case has not the same pattern of facts as the instant case, it is of the same design in that the principle of law involved is identical — that the binding effect of a thing adjudged is so conclusive that no subsequent finding can disturb it. Justice White aptly declared there:
“ * * * It is hardly necessary to say that the averment that the plaintiffs in the original suit knew that they were not lawful heirs at the time of their demand for recognition furnishes no ground for an action of nullity; but if it did it is disproved by the record now before us. Plaintiff does not; so far as the other grounds go, ask the annulment of the judgment on account of matters not known to him at the time of the institution of the suit; but, on the contrary, *327 admits his knowledge of every fact now urged at the time the original suit was brought. If any thing is settled in our jurisprudence, it is that one cannot be heard by way of action in nullity to destroy a judgment for matters known and in existence at the time of the institution of the suit in which the judgment was rendered, even though by some neglect they may not have been pleaded. [Chinn v. First Municipality of New Orleans], 1 Rob. 523; [Derbigny v. Peirce] 18 La. 551; [Norris v. Fristoe] 3 La.Ann. 646; [Swain v. Keen] 6 La.Ann. 799. But it is said that by the neglect of Wax an opportunity was not afforded plaintiff to inform his counsel of the serious defense. We do not think the proof establishes the assertion, but if it did the conclusion would be the same. Wax was a defendant, and plaintiff’s action to annul would resolve itself into a complaint of the neglect or omission of his co-defendant.
“Second. The legal heirship of the defendants is clearly established by the presumption of the .thing adjudged. All the elements of res adjudicata are to be found in the final judgment rendered between the parties. It is contended that Lebrew was originally sued as universal legatee, and hence the recognition of the plaintiffs in that suit as the sole legal heirs of the deceased while binding on him in such capacity is not in that of legal heir, which he assumes in this controversy. It is obvious that -this is-a- mere, evasion,'.and that the non-existence of this new quality in the present plaintiff was the very thing adjudged, for the sole, legal heirship .in the then plaintiffs is incompatible with the claimed legal heirship of the present plaintiff. We are told that if the defendants are adulterous bastards the recognition of their right to heirship would be a violation of public order, and hence such fact can be shown at any time despite the sanctity of the thing adjudged. The proposition is vicious, because the very matter established by the legal presumption is the legal heir-ship. In speaking on this subject Demolombe says: ‘But it may be contended that in case of a nullity founded on public order which a defendant could not renounce he can consequently urge it in a second suit, although not presented' in the . firs.t. We reply that this distinction is inadmissible, * * * Because it is contrary to every principle. What! when a pleader had defended himself by every means, or even when he has been condemned by default, will it be said that the law will presume that he has failed to present his defenses ? Certainly not. That which it presumes is that these defenses do not exist. * * * ’ Resting our opinion as we do on the presumption of the thing adjudged, we deem it well to say that we do not even remotely indicate any opinion as to the facts shown by the record, so as to leave room for any inference that we consider without reference to the legal presumption the proof establishes the success of this attempt on the part of plaintiff to bastardize his step-. *329 grandchildren in order himself to reap their grandmother’s estate.”
For the reasons assigned, the judgment appealed from is affirmed; plaintiffs-appellants to pay all costs.